Filed 7/9/15  Lee v. Wilshire State Bank CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JUN HO LEE et al., | B247471 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC472071) |
| v. | |
| WILSHIRE STATE BANK et al., | |
| Defendants and Respondents. | |

APPEAL from the judgment of the Superior Court of Los Angeles County. Amy D. Hogue, Judge.  Affirmed.

Law Offices of Renee L. Campbell, Renee L. Campbell; Law Offices of Ronald G. Kim and Ronald G. Kim for Plaintiffs and Appellants.

Frandzel Robins Bloom & Csato, Steven N. Bloom, Hal D. Goldflam and Brad R. Becker for Defendant and Respondent Wilshire State Bank.

Law Office of Ronald L. Gruzen and Ronald L. Gruzen for Defendant and Respondent 844 LBLA, LLC.

\* \* \* \* \* \* \* \* \* \*

Plaintiffs and appellants Jun Ho Lee (Lee), Jin Hee Chang (Chang) and Ogamdo Café & Restaurant, Inc. (Ogamdo Café) appeal from a judgment of dismissal entered after the demurrers of defendants and respondents Wilshire Bank (Bank) and 844 LBLA, LLC (LBLA) were sustained without further leave to amend as to plaintiffs' third amended complaint.[1] Plaintiffs contend the third amended complaint states proper claims for fraud, breach of contract, and unfair competition, and also contains sufficient facts demonstrating the claims are not time-barred, and that all plaintiffs have standing.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On appeal from a judgment dismissing an action after the sustaining of a demurrer without leave to amend, our review is de novo. (*Aubry v. Tri-City Hospital District* (1992) 2 Cal.4th 962, 966-967 (*Aubry*); accord, *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.) For the limited purpose of reviewing the propriety of the trial court's ruling, we accept as true all well-pled factual allegations in the operative complaint, as well as any facts that may be reasonably implied or inferred from those expressly alleged. (*Aubry*, at pp. 966-967; accord, *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).) We do not "however, assume the truth of contentions, deductions or conclusions of law." (*Aubry*, at p. 967.) Our factual summary is therefore drawn from the allegations of the operative third amended complaint according to this well-established standard.

1.      **Operative Third Amended Complaint**

In 2005, Lee owned real property located at 836-844 South La Brea Avenue in the city of Los Angeles (hereafter "the property").[2] Lee and Chang operated a restaurant on

---

[1]      Where appropriate we refer to Lee, Ogamdo Café and Chang as "plaintiffs." Wilshire Bank was formerly known and sued below as "Wilshire State Bank."

[2]      Lee held title to the property with his wife, Hye Jin Lee, and she was also a named borrower on the subject note, but she was not a party below and is not a party to this appeal.

2

the property named Ogamdo Café, which was organized as a California corporation. Both Lee and Chang were officers of the corporation.

In December 2005, Lee[3] obtained a commercial loan from Bank in the amount of $1.6 million. The loan was secured by the property. Lee sought the loan from Bank due in part to the fact Bank held "itself out to the public as a 'Korean community bank' that is staffed with employees competent to serve a Korean-language" clientele. Lee and Chang speak some English but Korean is their native language.

The promissory note and the deed of trust are attached and incorporated as exhibits 1 and 2 to the third amended complaint. Lee and his wife are the signatory borrowers on the note, dated December 9, 2005. Chang and Ogamdo Café are not signatories or borrowers on the note. Lee and his wife are the identified trustors in the deed of trust recorded December 21, 2005. Bank is the identified lender/beneficiary and Stewart Title of California, Inc., is the named trustee. The deed of trust provides, among other standard provisions, for the appointment of successor trustees, and vests both the beneficiary and trustee with the power of sale in the event of default.

The first payment due on the note was January 12, 2006, and the last payment was scheduled for December 12, 2012. The note had a variable interest rate, with a starting rate of 8.25 percent. Lee did not receive "any written statement regarding the disbursement of the loan proceeds" nor did he receive "written monthly notices for payments due" on the loan for January and February 2006.

Chang contacted Bank about the failure to provide written communications regarding the note and was told by Calvin Lee, one of Bank's senior vice presidents, that the records had been corrected to show the address of the property as the address to

---

**3** The pleading alleges that "plaintiffs" obtained the loan, but the promissory note attached and incorporated shows only Lee and his wife as borrowers. "[T]o the extent the factual allegations conflict with the content of the exhibits to the complaint, we rely on and accept as true the contents of the exhibits and treat as surplusage the pleader's allegations as to the legal effect of the exhibits." (*Barnett v. Fireman's Fund Ins. Co*. (2001) 90 Cal.App.4th 500, 505.)

which all communications with plaintiffs should be mailed. Calvin Lee also advised that because the first two payments on the note had been missed, late fees were imposed, and the then-current balance due was $40,786.21. Plaintiffs paid that amount to Bank.

After plaintiffs forwarded that payment, Bank continued to send "significantly inconsistent and incomplete statements" to plaintiffs, but plaintiffs continued to "make payments in good faith" on the loan.

Plaintiffs believed Bank was engaged in intentional conduct designed to cause missed or incomplete payments under the terms of the loan in order to provide a basis for imposing improper late fees and the significantly higher default interest rate. Plaintiffs believed Bank was attempting to cause a default on the loan, allowing Bank to then pursue a wrongful foreclosure and unlawfully take the property.

In December 2006, Bank again claimed Lee was behind in payments due, threatening the initiation of foreclosure proceedings if an amount in excess of $80,000 was not paid immediately. Lee received letters in December 2006 from Eleanor Martinez, one of Bank's senior vice presidents, and in January 2007 from Janet Carnes, assistant vice president of Bank's special assets department, regarding the alleged delinquencies.

The letters are attached and incorporated as exhibits 3 and 4. The December 2006 letter recites missed payments on the note for September 2006 through December 2006, and accrued late charges of $1,432.46. The January 2007 letter recites missed payments for November 2006 through January 2007, with accrued late charges of $2,148.69. It also advises that Bank was required to place insurance on the property due to the lack of evidence plaintiffs had obtained coverage as required under the terms of the note. Bank proceeded with filing a notice of default in January 2007 in light of the alleged delinquencies. The notice of default is attached and incorporated as exhibit 5.

Bank thereafter failed to provide written confirmation of the "updated account status" of the note or to make Korean-speaking staff available to plaintiffs in communicating about the note, including any alleged problems with payment status.

4

Bank also continued to delay the processing of payments tendered in order to impose unlawful late fees.

In May 2008, Bank again claimed delinquencies on the loan. Janet Carnes of Bank's special assets department demanded that Lee execute a forbearance agreement to avoid foreclosure proceedings. However, the forbearance agreement presented to Lee was written in English. Lee explained he could not read or understand the terms, but Bank refused to provide a Korean language translation, refused to let Lee retain his own translator, refused to provide Lee with a copy of the agreement, and only showed him two pages of what was eventually discovered to be a six-page document. The forbearance agreement is alleged to be attached as exhibit 6 but is not a part of the copy of the pleading contained in the record. However, Bank presented the agreement and asked the court to take judicial notice of it in connection with its demurrer.[4] The forbearance agreement is dated May 29, 2008, and is executed by Lee as borrower on the underlying note, and as the corporate president of Ogamdo Café, identified as a guarantor.

In July 2009, Lee was "in fact not in default" on the loan, but Bank refused to accept Lee's tender of the July payment as a pretext for claiming a default on the loan and in "furtherance of the sham Note sale" to LBLA.

A month later, in August 2009, Bank sold Lee's note to LBLA. Plaintiffs believed LBLA was a "cronie[] and business associate[]" of Bank and part of a conspiracy with Bank to unlawfully take the property. In connection with "the sham Note sale," Bank executed and recorded an assignment of the deed of trust and note to LBLA. The assignment is attached and incorporated as exhibit 7 and bears a recording date of August 17, 2009.

---

[4] Because plaintiffs alleged and intended to incorporate the forbearance agreement in their operative pleading, but apparently omitted the document in error, it was appropriate for the document to be judicially noticed. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)

5

"[I]n furtherance of [the] conspiracy" defendant LBLA continued the pattern established by Bank of failing to provide accurate statements to Lee, and wrongfully refusing to accept tender of payments made by Lee in order to fraudulently induce Lee's default on the loan.

In April 2010, LBLA served a notice of substitution of trustee under the deed of trust from Stewart Title of California, Inc., to Chicago Title Company. The substitution is attached and incorporated as exhibit 8 and bears a recording date of May 10, 2010.

In May 2010, LBLA "wrongfully" recorded a notice of default and election to sell the property. The notice is attached and incorporated as exhibit 9.

Plaintiffs believe that in March 2011, the trustee's sale took place and LBLA purchased the property for $1.7 million, an amount below the property's appraised value of $2.5 to $3 million. The trustee's deed upon sale is attached and incorporated as exhibit 10 and bears a recording date of March 14, 2011. It identifies LBLA as the grantee and as the "foreclosing beneficiary," and the amount paid for the property as the "amount of the unpaid debt together with costs" in the total amount of $1,761,117.38.

Plaintiffs believe the trustee's sale was fraudulent, illegal and void because LBLA did not have the legal authority to institute foreclosure proceedings; the notice of default was recorded without legal authority; the notice of trustee's sale was never served on Lee, nor posted at the property or published in a publication of general circulation; and the assignment of the deed of trust was void ab initio because it was "falsely executed." Plaintiffs were "able and willing" to tender all amounts due on the loan.

Plaintiffs believe that prior to the illegal trustee's sale in March 2011, LBLA assigned the deed of trust back to Bank in October 2010. Therefore, at the time of the sale, LBLA was no longer the beneficiary under the deed of trust, not entitled to foreclose, and not entitled to purchase the property by "credit bid." The assignment of the deed of trust and note to Bank in October 2010 is attached and incorporated as exhibit 11. It was recorded on October 18, 2010, and the word "collateral," typewritten as a modification to the form document, precedes the title "Assignment of Deed of Trust."

6

The first cause of action for fraud against Bank and LBLA incorporates the above allegations and otherwise pleads the elements of fraud with general allegations and no additional facts.

The second cause of action for breach of contract is pled against Bank only. It incorporates the above allegations and alleges that the terms of the note with Bank included that (1) monthly payments were due on or before the twelfth of each month; (2) that Bank would accept "and properly credit payments" made on the note; (3) "a grace period of 10 days applied"; and (4) notices and statements would be sent to the address for the property. It further alleges that Lee "substantially performed" under the note by "tendering multiple payments on the Loan despite not being provided a clear accounting of how the payments were being applied to any amounts claimed to be in default."

The third cause of action for violation of Business and Professions Code section 17200 is pled against Bank and LBLA. It incorporates the above allegations and identifies 13 allegedly deceptive and unfair business practices of Bank and LBLA: "a. Executing and recording false and misleading documents; [¶] b. Acting as beneficiaries and trustees without the legal authority to do so; [¶] c. Engaging in fraud, malfeasance, and perjury by utilizing documents with forged signatures and placing these instruments in the US Mail or other form of delivery to various individuals and institutions including local government recording offices; [¶] d. Assessing improper or excessive late fees; [¶] e. Improperly characterizing customers' accounts as being in default or delinquent to generate excessive and unwarranted payments, fees and default interest at a substantially higher rate; [¶] f. Instituting improper or premature or unauthorized or unlawful foreclosure proceedings to generate unwarranted excessive payments and fees and the wrongful foreclosure on real property security; [¶] g. Misapplying or failing to apply customer payments; [¶] h. Failing to provide adequate monthly statement information to customers regarding the status of their account, and any default or delinquency, and amounts applied to cure the default or delinquency; [¶] i. Seeking to collect, and collecting, various improper fees, costs, and

7

charges, that are either not legally due under the contract or California law, or that are in excess of amounts legally due; [¶] j. Mishandling borrower's payments and failing to timely or properly credit payments received, resulting in late charges, delinquencies or default; [¶] k. Treating borrowers as in default on their loans even though the borrowers have tendered timely and sufficient payments or have otherwise complied with payment requirements or California law; [¶] *l.* Failing to disclose the fees, costs, and charges allowable under the contract, and the APR, and [¶] m. Ignoring or miscalculating grace periods."

The third amended complaint seeks unspecified compensatory damages, punitive damages, attorney fees and injunctive relief "enjoining Defendants from use, possession, sale, and/or control of the Subject Property."

**2.      Procedural Summary**

Plaintiffs filed this action on October 21, 2011. Multiple demurrers were raised and amended pleadings filed. Plaintiffs filed the operative third amended complaint on October 29, 2012, and defendants Bank and LBLA once again challenged the pleading by way of demurrer.

Following argument, the court issued a minute order dated January 10, 2013, sustaining the demurrers of Bank and LBLA to the third amended complaint without further leave to amend. The minute order states the "court finds good cause to order [the] entire action dismissed, with prejudice." The minute order contains the signature of the judge.

Both Bank and LBLA also submitted separate judgments of dismissal for the court's signature. Bank's judgment of dismissal was signed and filed the same date as the order on January 10, 2013. LBLA's judgment of dismissal was not submitted to the court until the following day, and was not signed and filed until March 4, 2013.

Plaintiffs filed a notice of appeal on March 13, 2013, from the "[j]udgment of dismissal after an order sustaining a demurrer" entered on "1/10/2013."

On May 1, 2013, the trial court granted Bank's motion for an award of attorney fees. On June 28, 2013, Lee filed a separate notice of appeal contesting the attorney fees

award (docket No. B249723).  On November 5, 2013, this court granted the stipulated request of the parties to consolidate both appeals under docket No. B247471.

**DISCUSSION**

**1.      Timeliness of Appeal**

Defendant LBLA contends the appeal must be dismissed as to it because plaintiffs failed to file a notice of appeal as to LBLA's separate judgment of dismissal entered on March 4, 2013.  We disagree.  The January 10, 2013 order of the court sustaining the demurrers of *both* Bank and LBLA, and dismissing the entire action with prejudice was signed by the court and therefore constitutes a valid judgment of dismissal as to *both Bank and LBLA*.  (Code Civ. Proc., § 581d; see also *Etheridge v. Reins International California, Inc*. (2009) 172 Cal.App.4th 908, 913.)  Plaintiffs timely appealed from that judgment of dismissal as to the entire action.  LBLA's submission of a redundant second judgment of dismissal as to it alone does not render plaintiffs' appeal untimely.

**2.      The First Cause of Action for Fraud**

The fraud cause of action is pled against Bank, the original lender/beneficiary under the commercial note and deed of trust, and LBLA, the successor beneficiary.  Plaintiffs contend the claim is adequately pled as to all essential elements and not time-barred.  We disagree.

**a.      Defendant Bank**

The gist of the fraud claim is that Bank and LBLA were engaged in a conspiracy to manipulate the processing of the loan in such a way as to cause Lee to default, allowing for the collection of unlawful late fees, the charging of a higher default interest rate, and the eventual foreclosure on the property when Lee could not pay the increasingly large amounts defendants claimed were delinquent.

The Bank's wrongful conduct of allegedly refusing to accept timely tender of amounts due, imposing late charges without cause, and coercing Lee to sign a forbearance agreement, all occurred no later than May 29, 2008.  Even assuming such allegations were sufficient to state a fraud claim against a corporate defendant, the

9

allegations demonstrate the claim is barred by the applicable three-year statute of limitation.  (Code Civ. Proc., § 338, subd. (d).)

Given the nature of the allegations against Bank occurring up through the signing of the allegedly coerced forbearance agreement on May 29, 2008, Lee cannot claim he was unaware of sufficient facts placing him on inquiry notice of Bank's alleged fraud by that date.  (See *Fox v. Ethicon Endo-Surgery, Inc*. (2005) 35 Cal.4th 797, 806-808 [a plaintiff is on inquiry notice triggering accrual of a cause of action "when he or she 'has reason at least to suspect a factual basis' " for the claim].)  This action was not filed until more than three years later on October 21, 2011.  Plaintiffs did not plead, nor have they offered any additional proposed facts, that would support a delayed accrual of the fraud cause of action.  The demurrer to the fraud claim as to defendant Bank was therefore properly sustained based on the time bar.

Moreover, the allegation that in July 2009, Bank wrongfully refused to accept tender of Lee's July 2009 payment despite the fact he was not in default at the time does not render the claim timely.  Lee relies on that allegation to invoke the last overt act doctrine, but that applies only where a valid civil conspiracy has been alleged.  (See *Wyatt v. Union Mortgage Co*. (1979) 24 Cal.3d 773, 786.)  As we discuss below, no valid conspiracy to defraud has been pled.  Thus, there is no basis for application of the last overt act doctrine to salvage the otherwise time-barred claim.

### b.    Defendant LBLA

LBLA's participation in the alleged scheme to defraud is alleged to begin with its "sham" purchase of the note and deed of trust in August 2009, within three years of the filing of the action.  Therefore, the time-bar is not relevant to LBLA.  Nonetheless, the allegations of fraud and conspiracy to defraud are inadequate.

The elements of common law fraud are (1) a false representation of fact; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance on the misrepresentation; and (5) damage resulting from the justifiable reliance.  (See, e.g., *Stansfield v. Starkey* (1990) 220 Cal.App.3d 59, 72-73.)  In order to withstand demurrer, all the elements of "fraud must be pled specifically; general and conclusory allegations

10

do not suffice. [Citations.] 'Thus " 'the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.' " [Citation.] [¶] This particularity requirement necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered." ' [Citation.]" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.)

Where, as here, fraud is pled against a corporate defendant, the requirement of specific pleading also mandates that a plaintiff " 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.' " (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 712, p. 128, quoting *Tarmann v. State Farm Mutual Automobile Ins. Co*. (1991) 2 Cal.App.4th 153, 157 (*Tarmann*).)

The allegations as to defendant LBLA are conclusory at best. Plaintiffs allege that LBLA bought the note in August 2009 and, "in furtherance of the conspiracy," continued the fraudulent pattern established by Bank in failing to provide accurate statements to Lee, and wrongfully refusing to accept tender of payments in order to induce a default. There are none of the required factual allegations for pleading fraud against a corporate defendant in this bald allegation of wrongdoing. (*Tarmann*, *supra*, 2 Cal.App.4th at p. 157.)

Plaintiffs also allege that LBLA substituted the trustee under the deed of trust and "wrongfully" recorded a notice of default and election to sell. The deed of trust specifically provides that the beneficiary may substitute a successor trustee and that the trustee would have the power to sell the property. No facts are pled explaining the conclusory allegations that there was something improper about the substitution or that the recordation was "wrongful."

Plaintiffs allege LBLA purchased the property at the March 2011 trustee's sale for $1.7 million, below the property's appraised value of $2.5 to $3 million. However, the statutory scheme governing nonjudicial foreclosures does not require the sale of a property at fair market value. It only requires that the property be sold to the highest bidder at the auction. (Civ. Code, §§ 2924g, subd. (a), 2924h; see also *Biancalana v.*

11

*T.D. Service Co.* (2013) 56 Cal.4th 807, 815-816, citation omitted [" 'beneficiary under a deed of trust may become the purchaser at a sale by the trustee . . . without impairing the validity of the sale' . . . [t]he statutory scheme governing nonjudicial foreclosure sales contemplates the submission of a credit bid by the beneficiary"].) Plaintiffs do not allege that LBLA's purchase of the property at the sale for the full amount of the indebtedness, plus costs, did not represent the highest bid, nor do they offer a basis to amend to truthfully plead such facts.

Finally, plaintiffs plead, again in conclusory fashion, various purported irregularities in the handling of the trustee's sale, including LBLA's purported lack of standing to initiate foreclosure because of an assignment of the deed back to Bank as collateral prior to the actual sale date.

However, to the extent plaintiffs are attempting to rely on the purported wrongful nature of the foreclosure proceedings as the basis for the fraud claim, they have not pled facts showing how such irregularities in the sale, including the assignment between LBLA and Bank in October 2010, was fraudulent or prejudicial to them. "[A] nonjudicial foreclosure sale is presumed to have been conducted regularly, and the burden of proof rests with the party attempting to rebut this presumption. [Citations.] Given the presumption of regularity, if [a] plaintiff contend[s] the sale was invalid . . . , *the burden rest[s] with [the] plaintiff affirmatively to plead facts demonstrating the impropriety.*" (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 270, italics added (*Fontenot*).) "[A] plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests." (*Id.* at p. 272.) And, prejudice "is not presumed from 'mere irregularities' in the process." (*Ibid.*)

The allegations show that the lawful trustee (Chicago Title Company) with the power of sale gave notice of and conducted the sale. Even assuming for the sake of argument it was procedurally irregular for the lawful trustee to proceed with the sale when LBLA had, subsequent to the recording of the notice of default, assigned the debt as collateral, that fact alone does not support a theory of fraud by LBLA as against Lee,

12

the debtor. " 'Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to [a borrower], an assignment merely substitute[s] one creditor for another, without changing [his or] her obligations under the note.' " (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 515 (*Jenkins*); quoting *Herrera v. Federal National Mortgage Association* (2012) 205 Cal.App.4th 1495, 1507.)

Further, the statutory provisions "broadly authorize a 'trustee, mortgagee, or beneficiary, or any of their authorized agents' to initiate a nonjudicial foreclosure [citation], [and they] do not require that the foreclosing party have an actual beneficial interest in both the promissory note and deed of trust to commence and execute a nonjudicial foreclosure sale." (*Jenkins, supra,* 216 Cal.App.4th at p. 513.) Plaintiffs do not allege or propose to allege that they were somehow misled or misinformed about the correct party to whom a payoff of the debt could be made to halt the foreclosure proceedings, or any other facts that demonstrate fraud or prejudice to them from the assignments between Bank and LBLA. The allegations do not support a predicate for fraud, and the demurrer was therefore properly sustained without further leave as to defendant LBLA.

Moreover, the boilerplate conspiracy to defraud allegations cannot save the claim as against either defendant. Where, as here, the elements of the underlying tort have not been adequately pled, simply including boilerplate conspiracy to defraud allegations does not somehow render the fraud theory viable.

3.     **The Second Cause of Action for Breach of Contract**

The breach of contract claim is pled only against Bank. The operative allegations are minimal, stating only that the note between Lee and Bank included the following terms: (1) monthly payments were due on or before the twelfth of each month; (2) that Bank would accept "and properly credit payments" made on the note; (3) "a grace period of 10 days applied"; and (4) notices and statements would be sent to the address for the property. It is further alleged that Lee "substantially performed" under the note by "tendering multiple payments on the Loan despite not being provided a clear accounting

13

of how the payments were being applied to any amounts claimed to be in default." However, there is no such "accounting" provision in the note attached and incorporated as exhibit 1. Therefore, the allegation does not plead any basis for an actionable breach by Bank over the alleged failure to provide accountings. (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 174 [a plaintiff "must state with certainty the facts constituting a breach of contract"].)

To the extent there are sufficient allegations of breach, construing the operative pleading liberally, about specific instances of Bank failing to properly credit or apply payments made by Lee that resulted in wrongful or excessive fees, all of those allegations of wrongdoing occurred more than four years before the filing of the action and are therefore time-barred. (Code Civ. Proc., § 337.) Even if we construe the allegation of the wrongful refusal of tender of payment in July 2009 as a sufficient allegation of breach falling within the statutory filing period, there are no allegations that that breach resulted in damage to plaintiffs. The allegations are that Bank almost immediately thereafter sold the note and deed of trust to LBLA, LBLA was thereafter solely responsible for the further handling of the note, and LBLA did not record a notice of default until May 2010, or proceed with a trustee's sale until almost a year thereafter in March 2011.

**4.      The Third Cause of Action for Unfair Competition**

The third cause of action is brought pursuant to the Unfair Competition Law (UCL) set forth at Business and Professions Code section 17200 et seq. The claim is pled against both Bank and LBLA. Plaintiffs contend the claim is adequately pled, except as to the element of the relief requested. Plaintiffs concede the claim as pled improperly seeks damages which are not allowed under the UCL, but urge that the complaint adequately states, or can be readily amended to state, a basis for restitution and injunctive relief which are proper remedies under the UCL. Once again, we do not agree.

The UCL is broad in scope. "The statutory language referring to 'any unlawful, unfair *or* fraudulent' practice (italics added) makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law. 'Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties

14

of unfair competition--acts or practices which are unlawful, or unfair, or fraudulent. "In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." ' [Citations.]" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 (*Cel-Tech*).)

Our Supreme Court has cautioned however that "an action under the UCL 'is not an all-purpose substitute for a tort or contract action.' [Citation.] Instead, the act provides an equitable means through which both public prosecutors and private individuals can bring suit to prevent unfair business practices and restore money or property to victims of these practices. . . . [T]he overarching legislative concern [was] to provide a streamlined procedure for the prevention of ongoing or threatened acts of unfair competition.' [Citation.] Because of this objective, *the remedies provided are limited*." (*Korea Supply Co. v. Lockheed Martin Corporation* (2003) 29 Cal.4th 1134, 1150, italics added.) A private UCL plaintiff may not recover damages or attorney fees and is ordinarily "limited to injunctive relief and restitution." (*Cel-Tech*, *supra*, 20 Cal.4th at p. 179.)

Here, the 13 enumerated business practices alleged to be unfair or deceptive by plaintiffs boil down to conclusory allegations that defendants engaged in acts designed to fabricate a default on the note, and proceed with a fraudulent and wrongful foreclosure on the property. Plaintiffs seek damages and injunctive relief "enjoining Defendants from use, possession, sale, and/or control of the Subject Property." While plaintiffs concede in their reply brief that their claimed remedies are not properly sought in connection with a UCL claim, they suggest the elements of a UCL claim are otherwise adequately stated and that the remedies can be amended on remand. We are not convinced.

The statutes pertaining to nonjudicial foreclosures (Civ. Code, § 2924 et seq.) "provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust. The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly

15

conducted sale is final between the parties and conclusive as to a bona fide purchaser."
(*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.) " 'Because of the exhaustive nature of
this scheme, California appellate courts have refused to read any additional requirements
into the non-judicial foreclosure statute.' [Citations.]" (*Gomes v. Countrywide Home
Loans, Inc*. (2011) 192 Cal.App.4th 1149, 1154.)

However, "a defaulting debtor is free to pursue a judicial action for 'misconduct
arising out of a nonjudicial foreclosure sale when [such a claim is] *not inconsistent with
the policies behind the statutes*.' " (*Jenkins*, *supra*, 216 Cal.App.4th at p. 510.) The
traditional remedies that have been held consistent with the statutory scheme is a suit in
equity to set aside the sale, or a tort claim seeking damages for wrongful foreclosure.
Both claims carry far more stringent pleading and proof requirements than a UCL claim.[5]
The burden to affirmatively plead specific facts demonstrating the alleged impropriety of
the foreclosure proceeding and the resulting prejudice rests squarely with the plaintiff.
(*Fontenot*, *supra*, 198 Cal.App.4th at p. 270.)

Plaintiffs provide no cogent or persuasive argument or authority suggesting that a
UCL claim, with its limited remedies, can be used to accomplish what in essence would
be an end run around the more difficult to plead suit in equity or tort claim for damages
arising from a wrongful foreclosure. The case law discussed above appears solidly
against the use of a UCL claim in that fashion. The demurrer was properly sustained
without leave to amend as to the third cause of action for unfair competition.

---

**5**     "[T]he elements of an equitable cause of action to set aside a foreclosure sale are:
(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of
real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party
attacking the sale . . . was prejudiced or harmed; and (3) . . . the trustor or mortgagor
tendered the amount of the secured indebtedness or was excused from tendering." (*Lona
v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 104; see also *Miles v. Deutsche Bank
National Trust Co.* (2015) 236 Cal.App.4th 394, 408 ["The basic elements of a tort cause
of action for wrongful foreclosure track the elements of an equitable cause of action to set
aside a foreclosure sale"].)

16

**5.     Standing as to Ogamdo Café and Chang**

As already discussed above, all three claims are fatally flawed.  Ogamdo Café and Chang's standing arguments are essentially moot.  It suffices to say, that Ogamdo Café and Chang admit, as they must, they were *not* signatories or borrowers on the subject loan.  Ogamdo Café and Chang failed to articulate any cogent argument supporting their contention that their status as a guarantor and corporate officer, respectively, provides a basis for their standing, as third party beneficiaries or otherwise, to sue for affirmative relief on the underlying note or for the allegedly wrongful foreclosure on the property.  The demurrer was properly sustained as to Ogamdo Café and Chang based on insufficient facts establishing their standing to sue.

**6.     Leave to Amend**

Where, as here, the trial court sustained the demurrers without further leave to amend, we must determine "whether there is a reasonable possibility the plaintiff could cure the defect with an amendment.  [Citation.]  If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred.  [Citation.]  The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando*, *supra*, 31 Cal.4th at p. 1081.)

Plaintiffs have not identified any additional facts they could allege that would cure the defects in the third amended complaint.  There was no abuse in denying plaintiffs a fifth opportunity to attempt to state their claims.

**DISPOSITION**

The judgment of dismissal is affirmed.  Defendants and respondents shall recover their respective costs on appeal.


                                                    GRIMES, J.

WE CONCUR:


          BIGELOW, P. J.                                    RUBIN, J.


17
